IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:22-cr-00327 |
| v. ) | Hon. Jeffery S. Frensley |
| ) | |
| [8] EVA EDL ) | |
| [9] EVA ZASTROW ) | |
| [10] JAMES ZASTROW ) | |
| [11] PAUL PLACE ) | |

## UNITED STATES' TRIAL BRIEF

The United States of America, by and through undersigned counsel, respectfully submits this trial brief of evidentiary and legal issues which may be raised at trial in *United States v. Eva Edl, Eva Zastrow, James Zastrow and Paul Place* (the "Defendants"). One co-defendant pleaded guilty on October 12, 2023. Six co-defendants, who were charged with the same FACE Act violation as the Defendants here as well as conspiracy against rights (the "felony co-defendants"), were convicted of both counts following a jury trial in January of 2024. The trial now before this Court is a straightforward case in which the Defendants are alleged to have, by non-violent physical obstruction, interfered with a patient and employees of a reproductive health clinic because the patient was receiving, and the employees were providing, reproductive health services.

The United States anticipates being able to prove its case in one day using four witnesses, including a cooperating defendant. Because of the straightforward nature of the case, because the defendants have had over 16 months to prepare for trial, including over three months to prepare for this bench trial, because of the victims' interest in the prompt resolution of the remaining charges, and because Defendants Edl and E. Zastrow are scheduled for a felony jury trial in the Eastern District of Michigan commencing on April 11, 2024, the United States respectfully requests a prompt trial date for this case.

**I.  Statement of the Case**

This case arises out of the Defendants' blockade of a reproductive health services clinic in Mt. Juliet, Tennessee on March 5, 2021. This blockade was planned over the month of February, both in person and over Facebook messages by the felony co-defendants and other unindicted co-conspirators. The week prior to the blockade, felony co-defendant Calvin Zastrow (Defendant J. Zastrow's and E. Zastrow's father) traveled to Tennessee, telling his co-conspirators that he was going to "nail down plans for next week's big deal." The planning resulted in multiple individuals, including Defendants Edl, E. Zastrow, and J. Zastrow, traveling to the Middle District of Tennessee. Defendant Place resided in Tennessee at the time.

On March 4, 2021, the felony co-defendants held a final planning meeting at which they divvied out roles. Some people were tasked with blocking doors; some were tasked with "blowfishing," meaning that they remained in the hallway and tried to appear to law enforcement that they were willing to be arrested but in fact intended to leave before arrests were made; some were tasked with interacting with police to make the blockade last as long as possible; and some were designated as drivers. Defendants Edl, E. Zastrow, and J. Zastrow were present at the meeting. Defendant Place may have been present as well.

The next morning, the clinic was set to open at 8:00 am. The felony co-defendants came prepared for a blockade with a pre-printed flyer that was titled "what really happened today in Mount Juliet? Police arrested peaceful, obedient Christians!" The flyer concluded with an email "wearerescuers@gmail.com," an email created by and registered to felony co-defendant Chester Gallagher. During the course of the morning, at least three of the felony co-defendants filmed the blockade, and the United States will play portions of those recordings as well as portions of another recording made by an unknown co-conspirator.

The clinic had two access points: the main entrance for patients, and a second entrance that could only be accessed by employees. The blockaders, including Defendants Place and J. Zastrow, began entering the building around 7:45 a.m. and took positions up and down the clinic's hallway. Cooperating defendant Caroline Davis was tasked with the role of watching the first-floor elevator for potential patients, and texting Defendant Place to signal when she saw a potential patient heading to the clinic floor. Davis had not met Place prior to March 4, and obtained his phone number shortly before the blockade.

Felony co-defendant Coleman Boyd positioned himself at the end of the hallway opposite the clinic and in front of the elevator. When Patient A exited the elevator, Boyd was the first to interact with her, asking her if she was coming "to the abortion mill." When Patient A declined to speak with him and left to find a restroom, Boyd sent his minor daughter to follow Patient A. Patient A and her partner then tried to proceed to the clinic entrance, stopping outside a bathroom in the hallway. Patient A's partner went inside the bathroom, leaving Patient A in the hallway. Multiple women approached Patient A and began talking at her. In the meantime, multiple blockaders, including Defendants Place and J. Zastrow, blocked the main clinic entrance:

- 3 -

Case 3:22-cr-00327   Document 530   Filed 02/09/24   Page 3 of 18 PageID #: 2669



Felony co-defendant Boyd provided commentary, explaining, "See, what you got here is a mom who's coming to kill her baby. Got one mom here, right now, right here." Employee A exited the clinic and came to Patient A, telling her to leave the building and wait in her car for further instruction. Patient A and her partner ultimately left the building because of the blockade. After they left, Boyd called another individual to tell them that Patient A and her partner were coming. Meanwhile, Employee A was unable to access the employee entrance because felony co-defendant Calvin Zastrow would not leave his position in front of the door.

As Patient A was leaving, and Employee A was attempted to re-enter the clinic, Defendants Edl and E. Zastrow rode the elevator to the 2nd floor of the building with felony co-defendant Dennis Green. Green recorded the elevator ride, and Caroline Davis told him that she'd sent the "signal" to warn that a potential patient was coming. Defendants Edl and E. Zastrow then proceeded directly to the clinic door. They joined Defendants Place and J. Zastrow, taking up

positions directly in front of the main entrance to the clinic, staying there for the whole of the blockade:



Other co-defendants and unindicted blockaders occupied the hallway.

The bulk of the scheduled patients avoided the clinic as the blockade wore on, but a few still tried to access the clinic. One arrived after law enforcement, and they tried to escort her down the hallway, yelling "part the seas!" None of the blockaders, including the defendants, moved, so a police officer had to physically move them to make his way down the hallway. The patient ultimately left, saying that the blockade was "too much" and made her "uncomfortable."

While the Defendants and others continued the blockade, two employees, including Employee A, and numerous patients, including Patient A, were prevented from entering the clinic. The defendants' blockade went on for more than two hours before police finally made arrests of nine adults, including all of the Defendants. It was only after these arrests that all the employees,

including Employee A, were able to return to the clinic and patients, including Patient A, were able to be seen for reproductive health services.

## II.     Crime Victims' Rights

The Crime Victims' Rights Act ("CVRA"), 18 U.S.C. 3771, *et. seq.*, was implemented to protect victims of federal criminal offenses and to guarantee them access to the criminal justice process. *See United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007); *see also Kenna v. United States Dist. Court,* 435 F.3d 1011, 1016 (9th Cir. 2006). Among the rights afforded crime victims[1] under the CVRA are "the right to proceedings free from unreasonable delay," and "the right to be treated with fairness and with respect for the victims['] dignity and privacy." *See* 18 U.S.C. §§ 3771(a)(7) and (a)(8); *see also United States v. Abrams*, No. 3:14-CR-0069-RCJ-WGC, 2016 WL 107945, at *1 (D. Nev. Jan. 8, 2016) (denying a defendant's motion for a 60-day continuance in part due to victim's right to proceedings free from unreasonable delay).

The legislative history of the CVRA strongly suggests that Congress's principal concern in including these rights was to provide victims with a means of due process. These provisions were intended to direct the executive and judicial branches to respect the legitimate interests of crime victims by ensuring they are not held hostage by protracted criminal proceedings.

As to the right to proceedings free from unreasonable delay, Senator Feinstein expressed Congress's concern over how lengthy continuances negatively impact crime victims:

> This provision [§ 3771(a)(7)] does not curtail the Government's need for reasonable time to organize and prosecute its case. Nor is the provision intended to infringe on the defendant's due process right to prepare a defense. Too often, however, delays in criminal proceedings occur for the mere convenience of the parties and those

---

[1] CVRA defines the term "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e).

delays reach beyond the time needed for defendant's due process or the Government's need to prepare. The result of such delays is that victims cannot begin to put the crime behind them and they continue to be victimized. It is not right to hold crime victims under the stress and pressure of future court proceedings merely because it is convenient for the parties or the court. This provision should be interpreted so that any decision to continue a criminal case should include reasonable consideration of the rights under this section.

*See* Statement of Senator Diane Feinstein, Congressional Record -- Senate, S4269, April 22, 2004.

Similarly, Senator Jon Kyl, one of the primary sponsors of the CVRA, expressed Congress's intent behind the right to proceedings free from unreasonable delay as follows:

> This provision [§ 3771(a)(7)] should be interpreted so that any decision to schedule, reschedule or continue criminal cases should include victim input through the victim's assertion of the right to be free from unreasonable delay.
> * * *
> A central reason for these rights is to force a change in the criminal justice culture which has failed to focus on the legitimate interests of crime victims, a new focus on limiting unreasonable delays in the criminal process to accommodate the victim is a positive start.

*See* Statement of Senator Jon Kyl, Congressional Record -- Senate, S10911, October 9, 2004.

> As to a crime victim's right to fairness under § 3771(a)(8), Senator Kyl stated:
>
> The broad rights articulated in this section are meant to be rights themselves and are not intended to just be aspirational. One of these rights is the right to be treated with fairness. Of course, fairness includes the notion of due process. Too often victims of crime experience a secondary victimization at the hands of the criminal justice system.

*See* Statement of Senator Jon Kyl, Congressional Record -- Senate, S4269, April 22, 2004.

In this case, the victim patients and employees have, as the evidence will show, suffered a harm as a consequence of the Defendants' conduct. Two victims have already testified at trial,

and we expect them to testify again. The uncertainty of whether and when they will testify, their apprehension of traveling to Nashville (they both reside out of state), and their fear of confronting the Defendants and testifying about the trauma caused by the Defendants before this Court weighs on them and will continue to weigh on them until this case goes to trial.

**III.     Applicable Law**

A. The Indictment

Count Two of the Indictment charges the Defendants with violating Title 18, United States Code, Section 248(a)(1) - the Freedom of Access to Clinic Entrances (FACE) Act; and for violating the FACE Act either personally or as an aider and abettor under Title 18, United States Code, Section 2. Count Two reads as follows as it applies to the Defendants:

> On or about March 5, 2021, in the Middle District of Tennessee and elsewhere, the defendants . . . [8] EVA EDL, [9] EVA ZASTROW, [10] JAMES ZASTROW, and [11] PAUL PLACE, aiding and abetting one another, did by . . . physical obstruction, intentionally . . . interfere with, and attempt to . . . interfere with Patient A, Employee A, and the other employees of the Clinic, because Patient A was obtaining, and the Clinic was providing, reproductive health services.

B. Elements of the Charge

As Judge Trauger instructed in *United States v. Gallagher, et al.*, the elements of Count 2 are as follows:

(1) that the defendant engaged in physical obstruction;

(2) that the defendant, by his or her physical obstruction, intentionally interfered with Patient A or the employees of the Clinic, or the defendant attempted to do so; and

(3) that the defendant acted as he did because Patient A was obtaining, or the Clinic was providing, reproductive health services. (Jury Instructions, DE 513, at PageID # 2618).

- 8 -

C. "Attempt" and "Aiding and Abetting"

Judge Trauger further instructed on "Attempt" as follows: A defendant can be convicted of Count 2 of the indictment three different ways: by committing the substantive offense, by attempting to commit the substantive offense, or by aiding and abetting the commission of the substantive offense. To find that the defendant attempted to interfere with Patient A or Clinic employees by physical obstruction, the government must prove that the defendant actually intended to interfere with Patient A or Clinic employees by physical obstruction, and that the defendant intentionally performed an act that constituted a substantial step towards interfering with Patient A or Clinic employees by physical obstruction. Mere preparation is insufficient. If you find that the defendant acted voluntarily and purposely to interfere with Patient A or Clinic employees by physical obstruction, or that the defendant attempted to do so, rather than acting inadvertently or by mistake, then you may find this element of the offense proved. (*Id.* at PageID# 2620-21).

Judge Trauger further instructed on "Aiding and Abetting" as follows: To find that the defendant aided and abetting the substantive offense, the government must prove the following elements:

(1) that the crime of violating the FACE Act was committed;

(2) that the defendant helped to commit the crime or encouraged someone else to commit the crime, either before or during the commission of the crime; and

(3) that the defendant intended to help commit or encourage the crime.

Proof that the defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he was an aider and abettor, but without more it is not enough. What

- 9 -

the government must prove is that the defendant did something to help the crime with the intent that the crime be committed. (*Id.* at PageID# 2623).

  C. Definitions

    *i.* *"Physical Obstruction"*

The term "physical obstruction" is defined as rendering impassable an entrance to or exit from a facility that provides reproductive health services, or rendering passage to or from such a facility unreasonably difficult or hazardous. Merely making the approach to health facilities unpleasant or emotionally difficult, without rendering an entrance or exit impassable or rendering passage to or from the facility unreasonably difficult or hazardous, does not constitute physical obstruction. (*Id.* at PageID# 2619).

    ii. *"Interfere With"*

The term "interfere with" means to restrict a person's freedom of movement. (*Id.* at PageID# 2620.)

    iii. *"Reproductive Health Services"*

"Reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy. A provider of reproductive health services includes any staff member who is an integral part of a business where reproductive health services are provided. If you find that the Clinic employees were working as staff members of a facility providing reproductive health services, then you may find that they provide reproductive health care. (*Id.* at PageID# 2622.)

- 10 -

Case 3:22-cr-00327   Document 530   Filed 02/09/24   Page 10 of 18 PageID #: 2676

## IV. Witnesses

The United States anticipates that it will call four witnesses, including Employee A, Patient A, the cooperating defendant, and a law enforcement officer who participated in the arrest of the Defendants. The United States is proposing a stipulation, covering the authenticity of videos preserved from Facebook.

The cooperating defendant will identify the Defendants and testify about her prior personal relationship with two of the defendants, along with how she learned of the potential blockade in Tennessee. She will explain how she came to participate in the blockade, and her communications regarding the plans with her co-conspirators leading up to the blockade. She will explain terms of art used by the co-conspirators, including "blowfish," and will explain that the co-conspirators' ultimate goal was to make the blockade take as long as possible. She will describe the planning of the blockade, why the particular clinic was chosen, and several meetings before the blockade at which roles were designated. She also will narrate the various recordings, explaining what was happening as the blockade progressed.

The United States anticipates that the employee will explain their experience during the blockade and authenticate a video they took on their iPhone when they exited the clinic to assist Patient A and were unable to reenter the clinic because felony co-defendant Calvin Zastrow was blocking the employee entrance and the main entrance was blocked by others.

The United States anticipates that the law enforcement officer will describe the blockade and explain that the defendants and their co-conspirators were blocking the doors of the clinic and refused to move. They will explain that the blockaders created an intimidating situation for any potential patient, and how arrests became necessary to reopen the clinic.

The United States also anticipates that Patient A will describe her experience with the blockade on March 5, 2021. Patient A will explain how her anxiety skyrocketed after seeing the blockaders and she felt that she could not physically get down the hallway because of the blockaders' presence, both physically blocking the hallway and creating intimidation in numbers and conduct.

## V. Potential Trial Issues

The United States wishes to flag for the Court four evidentiary issues that may arise during trial.

### A. Pending Motions in Limine

The defendants have fled three Motions in Limine (DE 332, 334, 339), and the United States has filed a response to these motions (DE 347), all of which are pending before this Court. Judge Trauger ruled on similar motions (DE 352). At this point, the United States does not intend to present FRE 404(b) evidence at trial, and asks this Court to deny DE 332, 334, and 339 as moot.

### B. Improper Cross-Examination

In *United States v. Gallagher, et al.*, the United States moved to preclude cross-examination regarding the specific reproductive health services patients sought or obtained, or that medical staff provided or were trained to provide. None of the felony co-defendants opposed the United States' position and Judge Trauger granted the request in full. DE 413. In this case, the United States will object to such cross-examination. In this case, all that is relevant to the Court's inquiry at trial is whether patients, including Patient A, sought and whether clinic staff were providing reproductive health services, meaning "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includ[ing] medical, surgical, counselling

- 12 -

or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." *See* 18 U.S.C. § 248(e)(5).

Further inquiry into any patient's course of treatment has no probative value and would improperly compromise patients' significant privacy interests. For this reason, cross-examination by any defendant into the nature of reproductive health services required, received, or provided would be irrelevant under Fed. R. Evid. 401, beyond the scope of direct examination by the United States and accordingly impermissible under Fed. R. Evid. 611(b), and substantially more prejudicial than probative under Fed. R. Evid. 403.

It is well established that this Court may reasonably limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) for the proposition that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.") (internal quotations omitted). Thus, this Court may prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding a district court's decision to prohibit cross-examination of agent about sensitive information that agent did not testify about on direct examination and did not pertain to the charges in the case), *overruled on unrelated grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). The Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is

- 13 -

Case 3:22-cr-00327    Document 530    Filed 02/09/24    Page 13 of 18 PageID #: 2679

effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

Even if Patient A's private health information was marginally relevant to the Defendants' defense, this Court may exclude evidence under Federal Rule of Evidence 403 on the ground that its marginal probative value is significantly outweighed by Patient A's privacy interests. The Supreme Court has recognized that trial courts' balancing under Federal Rule of Evidence 403 should account for concerns extrinsic to the litigation, such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] . . . marginally relevant." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (citing *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986)). Here, the Crime Victims' Right Act affords a crime victim the right to be "reasonably protected" and "treated with fairness and respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). Accordingly, any inquiry by the Defendants about Patient A's private health information should be precluded to protect her right to dignity and privacy.

*C. Physical Security Policy*

In its initial discovery production, subject to a protective order, the United States produced to the defendants the national physical security policy for the organization that operated the reproductive health clinic blockaded in this case. Although the specific health clinic at issue in this case is now closed, the organization continues to operate reproductive health clinics across the country that continue to be subject to this policy. This fourteen-page security document includes detailed steps for identifying and responding to, *inter alia*, potential mail bombs and safety evacuations in the event of certain threats. Accordingly, the document presents a readily exploited

- 14 -

Case 3:22-cr-00327　Document 530　Filed 02/09/24　Page 14 of 18 PageID #: 2680

roadmap for a an individual or group to bypass security procedures, engage in criminal conduct, and even deliver a mail bomb or otherwise trigger a mass casualty incident.

The United States foresees the possibility that defense counsel may be able to cross-examine employees about their compliance with some basic provisions of the physical security policy on March 5, 2021. However, the United States anticipates objecting to any attempt to introduce the security policy into evidence as irrelevant, as inadmissible hearsay, as otherwise lacking an adequate evidentiary foundation, as improper impeachment, and/or as barred under the collateral issue rule.[2] In the event that portions of the physical security policy become admissible evidence, the Court should admit only those specific portions and, depending on the specific content of those portions, seal the exhibit to protect it from public disclosure.

At trial in *United States v. Gallagher, et al.*, Employee A was questioned about the policy and agreed she had violated it, but no party sought to introduce it into evidence.

*D. Fed. R. Evid. 610*

Federal Rule of Evidence 610 states, "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." This prohibition concerns all types of theological belief systems, including belief systems that do not involve a deity. *See McCormick On Evid.* § 46 (8th ed. 2022 update) ("Today, there is an insufficient basis for believing that the lack of faith in God's avenging wrath is an indication of greater than average untruthfulness. Without that basis, the evidence of atheism is irrelevant to the question of credibility."). Rule 610 is short, straightforward, and rarely implicated, referenced in only 117 federal court decisions

---

[2] The collateral issue rule "provides that evidence is inadmissible if it is offered solely for the purpose of contradiction and no other." *United States v. Schwyhart*, 123 F. App'x 62, 65 (3d Cir. 2005).

- 15 -

available in Westlaw. However, the United States anticipates that it may invoke the rule to object to improper questioning and/or argument in this trial.

### E. Co-conspirator Statements

The United States anticipates relying in part on co-conspirator statements made in Facebook videos to prove its case against the defendants. Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that, "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E) (emphasis added). The Court may admit an out-of-court statement under this rule if it finds, by a preponderance of the evidence, that a conspiracy including a defendant and the declarant existed, and that the statement was made during the course and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Co-conspirator statements are admissible so long as circumstantial evidence permits a finding that there was a conspiracy involving the declarant and the defendant. *United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005) (citations omitted). The *Martinez* court explained that what was essential to the analysis was "that the government show that the unknown declarant was more likely than not a conspirator." *Id.* (allowing the statement of an uncharged co-conspirator whose identity was unknown, noting that even an anonymous statement may be admissible under Federal Rule of Evidence 801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the evidence that a conspiracy existed between declarant and defendant, and the statement was made in the course and in furtherance of the conspiracy). A statement is made in the course and furtherance of the conspiracy where it is "intended to promote conspiratorial objectives," including where "the statements are made to apprise a coconspirator of the progress of the conspiracy, to induce his continued participation, or to allay his fears." *Id.* at 327.

## VI. Conclusion

The defendants in this case executed a joint effort to block the doors of a reproductive health and to do so for as long as possible. They did so in order to prevent patients from receiving reproductive healthcare and to prevent the clinic from providing reproductive health services to its patients. The United States' evidence will prove their guilt beyond a reasonable doubt. Because of the straightforward nature of this case, because of the lengthy time the Defendants have had to prepare for a petty misdemeanor case, because of the victims' interest in prompt resolution, and because of the approaching felony trial for two of the Defendants, the United States is prepared to try this case forthwith.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

**CERTIFICATE OF THE SERVICE**

      I certify that a true and correct copy of the foregoing was filed electronically and served electronically, via the CM/ECF electronically filing system on this 9th day of February, 2024, upon the following:

**David R. Heroux**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
(615) 250-0050
Email: heroux@tennesseedefense.com
*Attorney for Defendant Eva Edl*

**David L. Cooper**
Law Office of David L. Cooper, P.C.
208 Third Avenue, N
Suite 300
Nashville, TN 37201
(615) 256-1008
Email: dcooper@cooperlawfirm.com
*Attorney for Defendant Eva Zastrow*

**Rayburn McGowan, Jr.**
8005 Church Street East
Suite 219
Brentwood, TN 37027
(615) 244-7070
Email: mcgowanrayburnjr@bellsouth.net
*Attorney for Defendant James Zastrow*

**Leonard E. Lucas, III**
The Law Firm of Leonard Earl Lucas
315 Deaderick St
Suite 1550
Nashville, TN 37238
301-204-6498
Email: leonard.lucas@lellawfirm.com
*Attorney for Defendant Paul Place*

                                        s/ *Amanda J. Klopf*
                                        Amanda J. Klopf
                                        Assistant United States Attorney